**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MOHAMED P. CISSE, : | |
| : | Civil Action No. 10-6116 (SDW) |
| Plaintiff, : | |
| v. : | **O P I N I O N** |
| OSCAR AVILES, et al., : | |
| Defendants. : | |

**APPEARANCES:**

> MOHAMED P. CISSE, Plaintiff pro se
> #233366 A089-37
> HUDSON COUNTY CORRECTIONAL CENTER
> 35 HACKENSACK AVE., E 4 N
> KEARNY, NJ 07032

**WIGENTON**, District Judge

Plaintiff Mohamed P. Cisse, currently confined at the Hudson County Correctional Center, Kearny, New Jersey, seeks to bring this action in forma pauperis, alleging violations of his constitutional rights.[1]

---

[1] At various times throughout the complaint, Plaintiff appears to assert claims on behalf of himself and other immigration detainees at Hudson County Correctional Center, however, Plaintiff lacks standing to assert claims on behalf of other prisoners. See Warth v. Seldin, 422 U.S. 490, 499 (1975) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Plaintiff also has not demonstrated that he would be an adequate "class representative" under Fed. R. Civ. P. 23 ("Class Actions"). Further, Plaintiff lists only himself in the caption. Accordingly, any claims not involving Plaintiff personally will be dismissed.

Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the complaint.[2]

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that Plaintiff's medical claim, his claim regarding reading materials and his claim regarding the ventilation system will proceed.  The remaining claims will be dismissed.

## I.  BACKGROUND

The following facts are taken from Plaintiffs' complaint and are assumed true for purposes of this review.

Plaintiff is an Immigration and Customs Enforcement ("ICE") detainee currently housed at the Hudson County Correctional Center ("HCCC").  Plaintiff names the following Defendants: Oscar Aviles, the warden of the facility; Lieutenant Rivera; Deputy Warden Eady;

---

[2] Plaintiff filed what appears to be an identical complaint to the instant complaint in a subsequent civil case, 10-6201 (FSH) Cisse v. Aviles, et al.  Though Plaintiff did not file an IFP application in the instant case, he did file a complete application in the duplicative case. The second action will be dismissed as duplicative and the Court will review the IFP application filed in that case for purposes of the instant case.

Captain Day; Hudson County Correctional Center; Thomas A. Degise, Hudson County Executive; and Sergeant L. Levine.

Plaintiff alleges nine separate claims: (1) violations of "due process" when disciplinary actions are taken against the detainees; (2) ten percent tax on commissary items; (3) detainee grievances are not answered; (4) detainees do not receive newspapers; (5) detainees do not receive novels or other reading material; (6) detainees are forced to go to bed every night at nine p.m.; (7) male detainees are housed in female units which do not have urinals; (8) the housing unit's ventilation system is dirty; and (9) Plaintiff was denied Tylenol for a headache and now suffers from a constant cluster headache.

**II. DISCUSSION**

**A. Legal Standard**

**1. Standards for a Sua Sponte Dismissal**

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B). This

3

action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) because Plaintiff is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Recently, the Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

See id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3; Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

**2. 42 U.S.C. § 1983**

Plaintiff's claims against Defendants have their jurisdictional basis under 42 U.S.C. § 1983. A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the claims asserted against the Hudson County Correctional Center are subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability. See Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (D.C.Pa. 1976). Accordingly, the Complaint will be dismissed in its entirety against this defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

**B. Discussion**

**1. Due Process Claim**

Plaintiff alleges that "when disciplinary actions are taken against detainees; they are first sent to the segregation unit (The Box), without the issuance of a ticket, nor a hearing, describing the charges they are being accused of." (Compl. at 5.) However, Plaintiff does not allege that he was subjected to this practice. Rather, he only cites to instances involving other detainees. As stated above, Plaintiff lacks standing to assert claims on behalf of other prisoners. See Warth v. Seldin, 422 U.S. 490, 499 (1975) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

Therefore, Count One of the Complaint will be dismissed.

**2. Commissary Tax Claim**

Plaintiff alleges that "the 10 % tax is another big thing with us detainees, for instance a calling cord [sic] is $25.00 without the tax, but with the tax it is $27.25, that we are forced to pay, if we want to speak with our love [sic] ones; and we are in the state of New Jersey, and we are charged New York rate state taxes; being incarcerated, should we be taxed at all?" (Compl. at 7.)

Though he does not explicitly state such, it appears that Plaintiff is challenging the imposition of a 10% Victims of Crime Compensation Board ("VCCB") surcharge on his commissary purchases. See N.J. Stat. Ann. § 30:4-15.1. Pursuant to New Jersey statute § 30:4-15.1, "[e]very commissary in a county or State correctional facility operated for the sale of commodities shall collect a surcharge of 10% of the sales price of every item sold. The surcharge shall be known as the 'VCCB Surcharge.' All funds collect pursuant to this section shall be forwarded to the State Treasurer for deposit in the Victims of Crime Compensation Board Account, ...."

The United States Court of Appeals for the Third Circuit addressed a comprehensive challenge to the VCCB Surcharge statute, including due process, equal protection, and double jeopardy challenges, and found the statute constitutional under both the United States and New Jersey Constitutions. See Myrie v. Comm'r, N.J. Dept. of Corrections, 267 F.3d 251 (3d Cir. 2001). See also

7

<u>Auge v. N.J. Dept. of Corrections</u>, 327 N.J. Super. 256, 743 A.2d 315 (N.J. Super. 2000), <u>cert. denied</u>, 174 N.J. 559 (2000) (rejecting double jeopardy and due process challenges under both New Jersey and United States Constitutions).

With regard to the fact that the VCCB surcharge would apply "across the board" to all inmates, the Third Circuit noted that the surcharge was not a criminal punishment, but was a civil remedial program, reasoning:

> To be sure, this history does not specify why the Legislature looked to prison inmates as the source of the needed revenues. It would seem, however, not unreasonable to infer that the Legislature regarded the inmate population as a cohort whose members were in large measure accountable for the victim harms for which adequate compensation had not been achieved. Such a legislative attribution of accountability-assuming it was, in fact, made-would not, of course, be flawless. As pointed out by the fiscal note, the program adopted by the Legislature contemplated that the surcharge would be added to the price of all inmate purchases, including purchases by inmates who had already completed payment of sums owing to the VCCB. Also, the New Jersey inmate population presumably included-and continues to include-persons held in pre-trial custody, not convicted of any crimes. But this lack of one-to-one correspondence between a particular inmate's purchase and an identifiable and precisely quantifiable dollar obligation to a victim does not undercut the general rationality of the attribution of accountability which, we assume, animated the Legislature. More to the point, it does not undercut the conclusion that the surcharge regime was intended by the Legislature to be civil and remedial.

<u>Myrie</u>, 267 F.3d at 259. The Third Circuit also used this rationale to hold that the surcharge did not violate the due process or equal protection rights of inmates, including those who may not owe any money to the VCCB. <u>See</u> <u>id.</u> at 263.

In this case, Plaintiff, as an detainee in the county jail, is properly subject to the VCCB charge, even though he, himself, may not owe any money to the fund. Accordingly, Plaintiff fails to state a claim of a constitutional violation arising out of the collection of the VCCB Surcharge.

To the extent that Plaintiff is not challenging the VCCB but rather the commissary prices in general, the Court notes that minimal overpricing in the prison commissary does not rise to the level of a constitutional violation. Jenkins v. Glover, 2009 WL 2391278, at *7 (D.N.J. July 31, 2009)(citing Chapdelaine v. Keller, 1998 WL 357350 at *14 (N.D.N.Y. 1998)).

Therefore, Count Two of the Complaint will be dismissed.

### 3. Unanswered Grievances

Plaintiff alleges that Defendants do not answer the detainees grievances. (Compl. at 5.)

"'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'" Graw v. Fantasky, 2003 WL 21523251 (3d Cir.2003)(citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)). Cf. Burnside v. Moser, 2005 WL 1532429 (3d Cir.2005) (prisoners do not have a constitutionally protected right to a prison grievance process); Lewis v. Williams, 2006 WL 538546, at *7 (D.Del. 2006) (failure to investigate a grievance does not raise a constitutional issue); Watford v.

9

Balicki, 2010 WL 1752510, at *7 (D.N.J. April 30, 2010)(finding that pretrial detainee failed to state a constitutional claim when he alleged that prison staff did not respond to his grievances.)

Therefore, Count Three of the Complaint will be dismissed.

**4.   Newspapers and Other Reading Material**

Plaintiff alleges that the detainees are denied daily newspapers and other reading materials.  Specifically, Plaintiff alleges that they are immigration detainees and they do not mix with the inmates and as such, the officials' argument that it is a security concern is not a good reason for denying them newspapers. (Compl. at 7.)  Plaintiff further alleges that a rule banning certain types of books is reasonably related to the prison's goal of security but a rule banning all novels and newspapers is not reasonably related to the objectives of the jail and are violative of his First Amendment rights.  (Id. at 8.)  Plaintiff further alleges that "a prison or jail cannot maintain a list of excluded publications, or decide that no materials from a particular organization will be allowed in.  It must decide about each book, magazines or newspaper on a case-by-basis."  (Id. at 9.)

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner

10

has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law....
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention....
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees....

Bell, 441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell, 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n. 20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n. 20, 561-62.

The Supreme Court previously determined that a Pennsylvania prison policy that denied newspapers, magazines, and photographs to a group of specially dangerous and recalcitrant inmates did not violate the First Amendment. See Beard v. Banks, 548 U.S. 521 (2006) (holding that ban on all newspapers, magazines, and personal photographs for inmates housed in long term segregation unit does not violate First Amendment because it is rationally related to rehabilitation). The case arose in the context of the defendants' motion for summary judgment, which "set forth several justifications for the prison's policy, including the need to motivate better behavior on the part of particularly difficult prisoners." Id. at 530. Noting that "prison officials have imposed the deprivation at issue only upon ... the 40 most intractable inmates in the Commonwealth [and] reached an

12

experience-based conclusion that the polic[y] help[s] to further legitimate prison objectives," id. at 533, the Supreme Court found that, on the basis of the record before the District Court, summary judgment in favor of the government was warranted. Id. at 534-35.

Unlike the procedural posture in Beard, this Court is analyzing whether sua sponte dismissal of Plaintiff's claim is warranted. This Court finds that, given the absence of a record at this time, sua sponte dismissal is not warranted and Plaintiff's claim regarding the newspapers and reading materials shall proceed. See Wolf v. Ashcroft, 297 F.3d 305 (3d Cir. 2002) (reversing and remanding dismissal of prisoner's challenge to rule prohibiting R rated movies because the connection between the policy and the government interest was not obvious); Dreibelbis v. Marks, 675 F.2d 579 (3d Cir. 1982) (reversing sua sponte dismissal of First Amendment claim because at the very least a record must be made as to the state's justifications).

**5. Forced Bedtime**

Plaintiff alleges that the detainees are forced to go to bed every night at 9 o'clock and this is cruel and inhuman punishment. (Compl. at 5.) Plaintiff further alleges that the "state prisoners go to bed at 11 pm on weekdays, and they have late nights on weekends and holidays." (Id. at 7.)

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more,

13

constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell, 441 U.S. at 540. In this case, requiring the detainees to go to bed at a certain time is reasonably related to the jail's interest in maintaining security and does not amount to punishment. Therefore, Plaintiff's claim regarding the forced bedtime of nine o'clock will be dismissed.

**6. Urinals**

Plaintiff alleges that the male detainees are housed on a female unit with no male urinals and they are forced to urinate on the toilet seats and some of the detainees have AIDS and therefore the whole population is being exposed. (Compl. at 13.)

As with the claim related to forced bedtime, the lack of urinals in the unit does not amount to punishment and therefore this claim will not proceed. Further, the decision by prison officials to house Plaintiff in the same prison with individuals infected with HIV/AIDS is not, by itself, a violation of Plaintiff's constitutional rights. "Courts consistently have held . . . that confinement in the same cell as an HIV-positive inmate does not violate the Eighth Amendment." Crocamo v. Hudson County Correctional Center, 2007 WL 1175753 at *6 (D.N.J. 2007) (quoting Bolton, 992 F. Supp. at 628 (finding that inmate was not injured by

14

exposure to HIV-positive inmate in double cell because HIV is not airborne or spread by casual contact)).

### 7. Ventilation System

Plaintiff alleges that the whole dorm's ventilation system is "completely dirty and clogged, [which is] evident by the dust balls blowing out the vents, and also considering the outer pipes are covered with thick layers of dust and each and every one of the exhaust openings [are] hopelessly blocked." (Compl. at 13.)

As noted above with respect to reading material, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners. This applies as well to claims regarding jail conditions. Bell, 441 U.S. at 545; Hubbard, 399 F .3d at 165-66; Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir.1993). Analysis of whether a pre-trial detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U .S. 520 (1979). Fuentes, 206 F.3d at 341-42.

A conditions of confinement claim is a constitutional attack on the general conditions, practices, and restrictions of pretrial or other detainee confinement. See Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997). A constitutional violation exists if the court finds that the conditions of confinement are not reasonably related

to a legitimate, non-punitive governmental objective. See Bell, 441 U.S. at 538-39.

Here, at this stage of the proceedings, it would appear that Plaintiff's allegations are sufficient to state a claim for "punishment" in violation of the Fourteenth Amendment. Plaintiff claims that poor ventilation is an unconstitutional condition of confinement. As the requirements of the Eighth Amendment set a "floor" for analysis of Fourteenth Amendment due process claims, it is worth noting that denial of the "minimal civilized measure of life's necessities", Rhodes v. Chapman, 452 U.S. 337, 347 (1981), which would include basic sanitary conditions that plaintiff alleges are lacking, would be sufficient to state an actionable constitutional deprivation. Further, these unsafe, unsanitary and inadequate conditions do not appear reasonably related to a legitimate, non-punitive governmental objective. Therefore, this claim will be allowed to proceed.

## 8. Medical Claim

Plaintiff alleges that his requests for sick calls for his headaches have been ignored and as a result, his headaches have escalated into a constant cluster headache that does not go away. (Compl. at 6.) He alleges that he has suffered severe pain that has been left untreated. (Id.)

As state above, since Plaintiff was a pretrial detainee at the time of the alleged injury, the Fourteenth Amendment is applicable.

16

See <u>City of Revere v. Massachusetts General Hospital</u>, 463 U.S. 239, 243-45 (1983) (holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial).

Plaintiff has alleged that he was denied medical treatment and his sick call requests went unanswered and as a result, he now suffers from permanent headaches. At this early stage of screening, Plaintiff has sufficiently alleged a claim under the Fourteenth Amendment and this claim will proceed.

**III. Conclusion**

For the reasons set forth above, Plaintiff's Complaint asserting claims for relief under 42 U.S.C. § 1983 for denial of newspapers and reading materials; for the unsanitary ventilation system; and for the denial of medical care will be allowed to proceed at this time. However, the remaining claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted at this time. Further, all claims against Hudson County Correctional Center shall be dismissed in their entirety. Plaintiff may move to file an amended complaint to correct the deficiencies, and to allege sufficient facts to demonstrate the plausibility of the dismissed claims, as outlined in <u>Iqbal</u>, and in

17

accordance with this Opinion.  Plaintiff's motion to amend must adhere to the court rules.  An appropriate order follows.


Dated: March 31, 2011

s/Susan D. Wigenton
Susan D. Wigenton
United States District Judge
